## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )    **Criminal No. 5:09-cr-00032** |
| **v.** | ) |
| | )    By:    **Michael F. Urbanski** |
| **MOISES MOREJON,** | )    **Chief United States District Judge** |
| **Defendant-Petitioner** | ) |

### MEMORANDUM OPINION

This matter comes before the court on defendant Moises Morejon's motions for compassionate release sought pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF Nos. 159, 167. The government responded and Morejon has replied. ECF Nos. 172, 174. Also pending is Morejon's motion for new counsel, ECF No. 177. For the reasons stated herein, the court will **GRANT** Morejon's motions for compassionate release and reduce his sentence to a total of 240 months, to be followed by a 5-year term of supervised release. The court will **DENY as moot** Morejon's motion for new counsel.

### I. Background

On August 20, 2009, a Grand Jury returned an indictment charging Morejon and a co-defendant with crimes related to guns and drugs. Indictment, ECF No. 13. Morejon was charged with conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1); possessing with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 2); and possessing and brandishing a firearm in furtherance of a drug-trafficking crime for which he may, be

prosecuted in a court of the United States (50 grams or more of methamphetamine (actual)), in violation of 18 U.S.C. § 924(c) (Count 3).

On August 24, 2009, the government filed a notice of enhanced punishment as to Morejon, pursuant to 21 U.S.C. § 851.[1] The notice was based on Morejon's previous conviction in state court on one count of sale of cocaine and one count of possession of cocaine. ECF No. 192. Morejon served 364 days on the state court convictions. Presentence Investigation Report (PSR), ECF No. 71 ¶ 29.

On October 21, 2009, Morejon entered into a plea agreement in which he pled guilty to Count 1 of the indictment, and to possession of a firearm in furtherance of a drug trafficking crime, which was a lesser included offense of Count 3 of the indictment. Plea Agreement, ECF No. 49 at 1. The remaining counts were dismissed. Id. at 2. The agreement also provided that the government would dismiss the sentence enhancement based on the possession of cocaine in state court and pursue enhancement based only on Morejon's state court conviction for sale of cocaine. Id. at 4. Morejon pled guilty the same day. ECF Nos. 50, 51.

On Count 1, Morejon faced a 20-year statutory minimum term of imprisonment and a maximum term of life. 21 U.S.C. § 841(b)(1)(A) (2009). Without the § 851 enhancement, he faced a minimum sentence of 10 years. Id. On Count 3, he faced a statutory term of 5 years to life, to run consecutively to any other sentence. 18 U.S.C. § 924(c)(1)(A). See PSR, ECF No. 71 at ¶ 81. According to the PSR, Morejon had a base offense level of 36 because he was

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

2

found responsible for at least 5 but less than 15 kilograms of methamphetamine. <u>Id.</u> ¶ 16 (citing USSG §2D1.1(c)(2)). He received a two-level increase for his role as manager of the drug distribution activities and a three-level reduction for acceptance of responsibility, for a total offense level of 35. <u>Id.</u> ¶¶ 16-25. His offense level of 35 combined with his criminal history category of VI gave him a guidelines range of 292–365 months. <u>Id.</u> ¶ 82.

Morejon objected to the two-level increase for his role as manager and the court sustained the objection. Sentencing Tr., ECF No. 85 at 2–4. That finding decreased Morejon's total offense level to 33 and made his guidelines range 235–293 months. <u>Id.</u> at 4. However, because the statutory mandatory minimum was 20 years, his guidelines range was 240–293 months. <u>Id.</u>

On January 6, 2010, Morejon was sentenced to a term of 240 months on Count 1 and 60 months on Count 3, for a total of 300 months, to be followed by a 10-year term of supervised release. J., ECF No. 62. Morejon has served more than 13 years of the sentence and has a projected release date of December 29, 2030.[2]

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

---

[2] https://www.bop.gov/inmateloc/ (search "Moises Morejon") (last viewed December 15, 2022).

3

> imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Morejon's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129-30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131; see also id. at 130 (emphasizing that the wording of the statute "make[s] it abundantly clear that Congress has provided defendants with two alternative ways to satisfy the threshold requirement").

In its response to Morejon's motion, the government argued that Morejon had not exhausted his administrative remedies because he had not submitted a request for compassionate release to the warden of his facility. Resp., ECF No. 172 at 8-10. Morejon replied that he had submitted a request to the warden asking to be granted compassionate release but received no response. He provided the court with copies of documents he

4

submitted to the warden. ECF No. 175. As it appears that Morejon submitted a request and supporting documents to the warden seeking compassionate release and more than 30 days have passed since he made the request, the court finds that Morejon has fully satisfied the statute's administrative exhaustion requirement.

### A. Extraordinary and Compelling Reasons

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Morejon's case. 18 U.S.C. § 3582(c)(1)(A). The USSG § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). See U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D).

In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement, finding that the policy statement applied only to motions

for compassionate release filed by the BOP. See discussion, McCoy, 981 F.3d at 280–84. However, the policy statement "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7.

The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act. Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020).

In this case, Morejon's argument is based on two changes to 21 U.S.C. § 841(b)(1)(A) which occurred as part of the First Step Act. Prior to the First Step Act, § 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not

6

be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). After passage of the First Step Act, if a person violates the statute "after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2018). Thus, the First Step Act reduced the mandatory minimum sentence from 20 to 15 years.

The First Step Act also changed the triggering predicate crime from a "felony drug offense" to a "serious drug felony." The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct related to narcotic drugs . . . ." 21 U.S.C. § 802(44). The term "serious drug felony" is defined as an offense described in 18 U.S.C. 924(e)(2) for which the offender served a term of imprisonment of more than 12 months. 21 U.S.C. § 802(57). Thus, today, in order for a sentence to be increased under § 841(b)(1)(A), a person must have a prior conviction for a "serious drug felony" rather than a "felony drug offense," meaning he must have served more than 12 months on the offense.

Morejon did not serve 12 months on the underlying drug charge that was cited as the predicate offense for the § 851 enhancement. Rather, he served 364 days. PSR, ECF No. 71 ¶ 29. Although there is only a one-day difference between the sentence Morejon served and the "more than twelve month" sentence contemplated by 21 U.S.C. § 802(57), Congress decided that service of a one-year term was the cut-off for a predicate sentence under § 841(b)(1)(A). Because Morejon served only 364 days, or one day shy of one year, service of that sentence does not qualify as a predicate offense for purposes of assessing a longer sentence under the statute.

7

If Morejon were sentenced for the same conduct today and the § 851 enhancement did not apply, he would be subject to a mandatory minimum sentence of 10 years but would have the same guidelines range of 235–293 months. Even if the § 851 enhancement applied, Morejon would face a mandatory minimum sentence of 15 years on the drug offense if sentenced today. Additionally, without the predicate offense, Morejon is subject to a 5-year minimum term of supervised release, rather than a 10-year term. 18 U.S.C. § 841(b)(1)(A).

In McCoy, 981 F.3d at 285–86, the Fourth Circuit found that a "gross disparity" between a petitioner's sentence at the time of conviction and the sentence that would be imposed under current law can be considered an "extraordinary and compelling reason" for granting compassionate release.[3] Morejon argues that if he were sentenced today, he would likely be sentenced to the mandatory minimum term of 10 years on the § 841(b)(1)(A) offense and that even if he were subject to the § 851 enhancement, the mandatory minimum sentence would be 15 years rather than 20 years. He argues that whether the 10-year minimum or 15-year minimum applied, the difference between his original sentence of 20 years on the drug conviction and the sentence he would receive today is a gross disparity that provides an extraordinary and compelling reason to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

The government argues that the disparity between the sentence Morejon received in 2010 and the sentence he would receive for the same conduct today is not an extraordinary and compelling reason to reduce his sentence. It claims that non-retroactive changes in sentencing law are not necessarily extraordinary and compelling and that a defendant must

---

[3] In McCoy, one petitioner originally was sentenced to just over 35 years and his sentence was reduced to time served, or approximately 17 years. The three other petitioners were sentenced to 45 years and their sentences were reduced to time served, or approximately 25 years. McCoy, 981 F.3d at 277-79.

show that his circumstances are beyond what is "usual, customary, regular, or common." Resp., ECF No. 172 at 11-12 (citing Black's Law Dictionary, (11th ed. 2019)).

McCoy made clear that in the context of "stacked" sentences imposed under 18 U.S.C. § 924(c), "the enormous disparity between [the original] sentence and the sentence a defendant would receive today can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." McCoy, 981 F.3d at 285. This court and others have applied the McCoy reasoning when considering motions for compassionate release founded on the claim that a defendant would no longer be subject to a longer sentence based on a § 851 enhancement. See, e.g., United States v. Gamboa, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022) (quoting United States v. Johnson, No. 2:07-cr-0924, 2021 WL 2379474 (D.S.C. June 10, 2021)) ("[T]he logic 'espoused in McCoy … applies with equal force to the similar disparities brought about by the First-Step-Act changes to [21 U.S.C.] §§ 841 and 851.'"); United States v. Richards, No. 3:11-CR-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021) (quoting United States v. Stuart, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020) ("Following McCoy, other district courts in this Circuit have found that they 'may consider changes in sentencing law—even nonretroactive one—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence.'"); Babb v. United States, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) (concluding that court has authority under McCoy to consider legislative change to § 851 in conducting review of motion for compassionate release); United States v. Lii, 528 F. Supp.3d 1153 (D. Haw. Mar. 23, 2021) (applying reasoning in McCoy to reduce a life

9

sentence based on two prior state court convictions for relatively minor drug offenses); and United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020) (same).

Additionally, the fact that the difference in the two sentences is ten years, and not the larger differences cited in McCoy, is not dispositive. This court found in United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266 (W.D. Va. July 15, 2021), that a sentencing disparity of 22 months was an extraordinary and compelling reason to grant a sentence reduction. Other courts have found similar differences in sentences to qualify as "extraordinary and compelling reasons" to reduce a sentence. See United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (finding sentence more than three years longer than it would have been were defendant convicted today to be an extraordinary and compelling reason for compassionate release); and United States v. Brown, No. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021) (finding 74-month difference in sentence defendant would have received if sentenced today to be a "gross disparity" and thus an extraordinary and compelling reason to warrant a sentence reduction). Considering these cases, the court finds that the disparity between Morejon's current sentence and the sentence he would likely be given for the same conduct today meets the threshold discussed in McCoy, and is an "extraordinary and compelling" reason to warrant a sentence reduction under § 3582(c)(1)(A).

## B. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's

10

term of imprisonment." <u>United States v. High</u>, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18

U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
>
> (5) any pertinent policy statement –
>
> (A) issued by the Sentencing Commission . . . .
>
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Morejon acquired methamphetamine from a Mexican source and with the help of a co-defendant and another person distributed it throughout Rockingham County, Virginia. He was found to be accountable for between 5 and 15 kilograms of methamphetamine. A search of his residence found methamphetamine, almost $5,000 in United States currency, two semi-automatic handguns and an SKS rifle, drug paraphernalia, a digital scale, and photographs of Morejon with guns and large sums of money. When officers entered Morejon's home, he was holding a .9 mm handgun and after a brief standoff he dropped the weapon. Morejon explained that he thought he was being robbed or assaulted by other drug dealers. He admitted the guns and drugs were his and that he was distributing the methamphetamine. PSR, ECF No. 71 ¶ 8. Not only did Morejon contribute to the devastation wrought by methamphetamine in the community, he also created a threat of grave danger with his willingness to defend his drug business with violence. Therefore, the nature and circumstances of the offense weigh heavily against a sentence reduction.

Turning to the history and characteristics of the defendant, Morejon was raised primarily by his mother as his father began serving a life sentence for murder when Morejon was a child. PSR, ECF No. 71 ¶ 71. Morejon reported a history of marijuana, cocaine, and methamphetamine use and was a heavy user of cocaine base throughout his twenties. However, he reported his last drug use as having been several weeks prior to his arrest in this case. Id. ¶ 75.

Morejon had a long criminal history beginning in 1994 when he was 15 years old and continuing until his arrest in this case in 2009. Although he has never been convicted of a

12

violent offense, he had multiple convictions for grand theft auto, as well as possession and sale of cocaine, retail theft, burglary of an unoccupied conveyance, petit larceny, shoplifting, attempt to possess a weapon as a felon, and multiple convictions for driving without a license. Id. ¶¶ 26–51.

At sentencing, the court presumably considered Morejon's personal history and did comment on his long criminal history. Sentencing Tr., ECF No. 85 at 9–10. The court noted that "The way you present yourself and the way it's been represented here about your cooperation is so at odds when I read your presentence report." Id. at 9. Accordingly, this court finds that because Morejon's history and characteristics were considered at sentencing, they weigh neither in favor nor against a sentence reduction.

Since being incarcerated, Morejon has committed a number of disciplinary infractions, although none of them have been violent. He has been found guilty of refusing to work, possessing an unauthorized item (three times), stealing hamburgers, possessing a non-hazardous tool (four times), use of drugs or alcohol, being in an unauthorized area, giving or accepting money without authorization, possessing a hazardous tool, and being insolent to a staff member. Disciplinary records, ECF No. 172-1 at 1-4. On a more positive note, Morejon has taken many academic and vocational classes over the years. ECF No. 175 at 5-6. Morejon provided a letter from his mother who said that he can live with her and her husband upon his release. Letter, ECF No. 176. Morejon also wrote a letter to the court expressing remorse for his actions and asserting that he intends to live a law-abiding life if released. Letter, ECF No. 179.

The court finds that taken as a whole, Morejon's institutional history is neutral with regard to a sentence reduction. To be sure, Morejon has taken many classes and he has not engaged in any violent behavior, but he has shown a disregard and lack of respect for prison rules, raising questions about his commitment to following the law.

Looking at the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds Morejon's sentence of 25 years, driven by the statutory mandatory sentences in his case, to be very long. At sentencing, the government asked the court to sentence Morejon to the bottom of the guidelines, because he had been very cooperative and had fully complied with the requirements laid out in the plea agreement. Sentencing Tr., ECF No. 85 at 8–9. A sentence of 15 years on the drug charge, to be followed by a 5-year sentence on the firearm charge, would be sufficient to achieve the punitive and deterrent goals of punishment. The court recognizes that, as discussed above, without the predicate offense enhancement, the minimum sentence under § 841(b)(1)(A) is 10 years. However, a 10-year sentence would not account for the dangerous conduct in which Morejon engaged by having a cache of weapons at his house, along with drugs and money.

Regarding the kinds of sentences available and the applicable guidelines range, Morejon would face a statutory mandatory minimum sentence of 10 years on the drug offense if he were sentenced today, because he did not serve a full year on the predicate offense. Even if he had served a full year, rather than 364 days, on the predicate offense, he would face a minimum

14

sentence of 15 years on the drug offense. This factor weighs in favor of a reduction of his sentence.

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Morejon's co-defendant, Rafael Jimenez, is serving a term of 240 months. Reducing Morejon's sentence to total of 240 months would not create a sentencing disparity. The remainder of the § 3553(a) factors weigh neither in favor nor against a reduction in Morejon's sentence.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Morejon's case. Given the circumstances of this case, including Morejon's history and characteristics, and the changes in 18 U.S.C. § 841(b)(1)(A) brought about by the First Step Act, the court concludes that a sentence of 180 months on the drug charge and a consecutive 60 months on the firearm charge, for a total of 240 months, is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Morejon's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public. See 18 U.S.C. § 3553(a).

### III. Motion for New Counsel

Morejon initially filed his compassionate release motion pro se. ECF No. 159. The court ordered the Federal Public Defender (FPD) to respond and advise whether she intended to supplement Morejon's motion. ECF No. 162. Donald Pender, an assistant FPD, filed a supplemental motion on Morejon's behalf. ECF No. 167. Approximately two months after Pender filed the motion, Morejon filed a motion with the court for a "change of appointed

counsel." ECF No. 177. Morejon complained that Pender had not contacted him, had spoken to his mother about "multiple details of [his] pending legal situation without prior authorization," and had advised his mother against sending letters of support on Morejon's behalf. Pender did not respond to the motion.

With entry of the order granting Morejon's request for compassionate release, Morejon's request to replace his counsel becomes moot as he no longer has an action pending. Accordingly, his request for the court to provide him alternative counsel is **DENIED as moot**.

## IV. Conclusion

For the above-stated reasons, the court will **GRANT** Morejon's motions for compassionate release, ECF Nos. 159, 167, and reduce his sentence on the drug charge to 180 months which, when added to the consecutive 60-month firearm charge, results in a total sentence of 240 months. His term of supervised release will be reduced from 10 years to 5 years. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: $01 - 30 - 2023$

Michael F. Urbanski
Chief United States District Judge

16